[Doc. No. 13]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| WILLIAM KOWAL and LISA KOWAL,<br><br>        Plaintiffs,<br><br>  v.<br><br>AURORA CASKET COMPANY, INC.,<br>et al.,<br><br>        Defendant. | Civil No. 11-6343 (RMB/AMD) |

**MEMORANDUM OPINION and ORDER**

      This matter comes before the Court by way of motion [Doc. No. 13] of Defendant, Aurora Casket Company, Inc. (hereinafter, "Defendant"), seeking an order staying litigation and compelling arbitration of Plaintiff William and Lisa Kowal's claims. The Court has considered the submissions of the parties and held oral argument on June 12, 2012 with Matthew Weisberg, Esquire, appearing for Plaintiffs and Amy Wilson, Esquire, appearing for Defendant. For the reasons set forth herein, the Court grants Defendant's motion for a stay of litigation and to compel arbitration.

In this employment action, Plaintiffs allege that on or about March 3, 2008, Defendant hired William Kowal as a sales representative for the Greater Philadelphia and New Jersey areas. (Id. ¶¶ 8, 10.) Plaintiffs allege that on or about July 9, 2010, Defendant directed Kowal to attend a disinterment of one of the Defendant's caskets where he discovered, upon excavation, that the casket was full of water. (Id. ¶¶ 13, 16.) Plaintiffs further allege that Defendant initially refused to honor the warranty of the casket and then only did so after Mr. Kowal openly disagreed with the decision. (Id. ¶¶ 29-30.) Plaintiffs allege that Mr. Kowal's employment with Defendant was terminated on or about May 6, 2011 in retaliation for his disclosure of an alleged defect in Defendant's product and of an alleged failure by the Defendant to honor warranties of merchantability and fitness. (Id. ¶ 43.) Plaintiffs assert claims against Defendant for wrongful termination; violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A. § 34:19-13 (hereinafter, "CEPA"); and loss of consortium/per quod. (Am. Compl. [Doc. No. 6.] ¶¶ 38-50.) Plaintiffs seek an award of front pay, back pay, lost future earnings under CEPA, as well as statutory, punitive, treble and compensatory damages, and injunctive relief. (Id. at 7-8.)

In the motion presently before the Court, Defendant contends that under the Federal Arbitration Act (hereinafter, "FAA"), 9 U.S.C. § 2, Plaintiffs' claims must be resolved by arbitration pursuant to the arbitration agreement (the "Arbitration Agreement") between the parties. (Def. Aurora Casket Co., Inc.'s Mem. of Law in Supp. of its Mot. to Compel Arbitration and Stay Litig. [Doc. No. 15] (hereinafter, "Def.'s Br."), 4.)  Defendant asserts that the FAA applies to the Arbitration Agreement executed by Plaintiff William Kowal on February 28, 2008 because Defendant is engaged in interstate commerce by operating throughout the United States and also because Mr. Kowal engaged in interstate commerce through his employment as a Sales Representative in Delaware, New Jersey, Maryland, and Pennsylvania. (Id. at 7.)  Defendant further contends that the Arbitration Agreement is a valid agreement and covers all claims contained in Plaintiffs' amended complaint. (Id. at 9.)  In support of this proposition, Defendant asserts that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (Id. at 8 (citing Great W. Mortg. Corp. v. Peacock, 110 F.3d 222, 228 n.25

3

(3d Cir. 1997)).) Defendant contends that Mr. Kowal voluntarily waived his right to a jury trial and agreed to submit any claim against Defendant to final and binding arbitration, including the claims that Plaintiffs have raised in the Amended Complaint. (Id. at 9-10.) Furthermore, Defendant asserts that the loss of consortium/per quod claim should be arbitrated because it is derivative of the other claims asserted by Plaintiffs which are within the scope of the arbitration agreement. (Id. at 10.)

While Plaintiffs concede that the FAA governs this case (Pls.' Resp. in Opp'n to Defs.' Mot. to Compel Arbitration and Stay [Doc. No. 24] (hereinafter "Pl.'s Reply") 1), Plaintiffs generally assert that the public policy underlying CEPA creates an exception to the FAA's broad policy in favor of arbitration. Id. Plaintiffs further argue that requiring arbitration of CEPA claims would run contrary to the intent of the statute, which permits CEPA claims to be decided by a jury. (Id. at 3-4.)

Section 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms

>of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The FAA embraces the "federal policy in favor of the resolution of disputes through arbitration . . . and that the law presumptively favors the enforcement of arbitration agreements." Brennan v. Cigna Corp., 282 F. App'x. 132, 135 (3d Cir. 2008) (citing Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003), and Harris v. Green Tree Fin. Corp., 183 F.3d 173, 178 (3d Cir. 1999)). In order for the FAA to apply, the Court "must find that the contract containing the arbitration provision 'evidenc[es] a transaction involving commerce.'" Crawford v. W. Jersey Health Sys., 847 F. Supp. 1232, 1240 (citing 9 U.S.C. § 2). "This [determination] is not a rigorous inquiry; in fact, the contract 'need have only the slightest nexus with interstate commerce.'" Id. (quoting Maxus, Inc. v. Sciacca, 598 So.2d 1376 (Ala. 1992)).

The FAA defines "commerce" as "commerce among the several States." 9 U.S.C. § 1. Mr. Kowal does not dispute that he worked as a sales representative for Defendant where he was allegedly responsible for marketing and selling products and services to Defendant's customers in Delaware, New Jersey, Maryland, and Pennsylvania. (Def.'s Br. 7). Defendant has its principal place of business in Indiana, but offers products and

5

services nationwide. Id. Because Mr. Kowal's position as a sales representative facilitated Defendant's interstate business activities in Delaware, New Jersey, Maryland, and Pennsylvania, the employment contract involves commerce among the several states. See Crawford, 847 F. Supp. at 1240 ("Because [plaintiff's] employment facilitated defendants' interstate business activities, the court finds that her employment agreement 'evidences a transaction involving commerce.'"). Therefore, the Court concludes that the FAA is applicable to the Arbitration Agreement.

A "motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005). The first prong requires a court to determine whether "the parties entered into a valid arbitration agreement." Great W. Mortg. Corp., 110 F.3d at 228. When making this determination, a court considers whether there was a valid agreement in place between the parties. Id. Additionally, "[a]n agreement to arbitrate statutory employment claims is binding on the employee when he or she has knowingly waived the right to a court hearing and has clearly agreed to the terms of the

6

agreement." Sarbak v. Citigroup Global Mkts., Inc., 354 F. Supp.2d 531, 541 (D.N.J. 2004).

The Arbitration Agreement at issue in this case provides in relevant part that:

> Aurora and the Employee hereby consent to the resolution by binding arbitration of all claims or controversies for which a federal or state court or other dispute resolution body otherwise would be authorized to grant relief, arising out of, relating to or associated with the Employee's employment with Aurora, that the Employee may have against Aurora or that Aurora may have against the Employee.
>
> Claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant, express or implied; tort claims; claims for discrimination or harassment on basis which include but are not limited to race, sex, sexual orientation, religion, national origin, age, marital status, disability or medical condition; claims for benefits, except as excluded in paragraph 5; and claims for violation of any federal, state or other governmental constitution, statute, ordinance, regulation, or public policy including but not limited to Title VII of the Civil Rights Act, Age Discrimination in Employment Act, The Americans with Disabilities Act, Family and Medical Leave Act, Equal Pay Act and their state equivalents. The purpose and effect of this Agreement is to substitute arbitration as the forum for resolution of these Claims. We both understand and agree that we are entering into this Agreement voluntarily, and that this Agreement provides for the waiver of our respective rights to a trial by jury on the claims covered by this Agreement. Arbitration shall be the exclusive forum for the claims covered by this Agreement.

(Gosney Affidavit [Doc. No. 13-2] Attachment 1, 1.)  Plaintiffs do not dispute that a valid arbitration agreement was entered

7

into by the two parties. (Pls.' Reply at 1.)  Defendant asserts, and Plaintiffs' counsel does not dispute, that Mr. Kowal voluntarily agreed to submit any claims that may arise against Defendant to final and binding arbitration as a condition of his employment with Defendant. (Def.'s Br. 9.)  All newly hired employees of Defendant are required to read and agree to the Arbitration Agreement. (Id. at 4.)  Therefore, the Court finds that a valid agreement to arbitrate exists.

Pursuant to the second prong of the inquiry, the Court determines whether the specific dispute falls within the substantive scope of the Arbitration Agreement.  Any doubts "concerning the scope of arbitrable issues should be resolved in favor of arbitration." Great W. Mortg. Corp., 110 F.3d at 228, (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-5 (1983)).  "[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) (quoting United Steelworkers of Am. v. Warrior &

8

Gulf Nav. Co., 363 U.S. 574, 582-83). When the arbitration provision is broad, "[i]n the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." Id. (quoting Warrior & Gulf, 363 U.S. at 584-85).

To compel arbitration, Plaintiffs' claims, which include (1) wrongful termination; (2) violation of CEPA; and (3) loss of consortium/per quod, must fall within the scope of the arbitration provision in the Arbitration Agreement. Plaintiffs' counsel does not dispute that the claims for wrongful termination and loss of consortium/per quod should be arbitrated if the CEPA claim is to be arbitrated. (Pls.' Reply at 1.) The Court agrees that, under the broad arbitration clause, the wrongful termination and loss of consortium/per quod claims should proceed to arbitration. See, e.g., Battaglia v. McKendry, 233 F.3d 720, 727 (3d Cir. 2000) ("[W]hen phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction . . .").

Plaintiffs' sole argument in opposition to Defendant's motion is that Plaintiffs' CEPA claim is not subject to arbitration. Plaintiffs assert that requiring CEPA claims to be

9

arbitrated would run contrary to the intent of the statute, which permits CEPA claims to be decided by a jury. (Id. at 3-4 (citing N.J.S<small>TAT</small>. A<small>NN</small>. 34:19-5).)  Specifically, Plaintiffs contend that allowing a CEPA claim to proceed to arbitration would protect "retaliatory employers and promote advancement of the underlying misconduct" thus invalidating the purpose of the CEPA, which is to "provide a whistleblower redress from retaliation." (Id. at 6.)  Plaintiffs assert that the New Jersey legislature amended CEPA in 1990 to provide for a right to a jury trial in response to the New Jersey Supreme Court's decision in Shaner v. Horizon Bancorp., 116 N.J. 433 (1989), which held that claims under LAD were not entitled to jury trial. (Id. at 5.)  Plaintiffs assert that CEPA's purpose and the amendment itself "speak directly against arbitration." (Id.)

In response, Defendant asserts that state law public policy is an invalid reason to deny a motion to compel arbitration under the FAA on two grounds.  First, Defendant contends that invalidating an arbitration agreement on public policy grounds is an "unauthorized expansion of § 2 [of the FAA]" and there is no prohibition on CEPA claims going to arbitration. (Def. Aurora Casket Co. Inc.'s Reply Br. in Supp. of its Mot. to Compel Arbitration and Stay Litig. [Doc. No. 26] (hereinafter,

10

"Def.'s Reply Br."), 3) (citing Nat'l R.R. Passenger Corp. v. Conrail, 892 F.2d 1066, 1070 (D.C. Cir. 1990). Defendant asserts that under § 2 of the FAA, only "applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements . . . ." (Def.'s Reply Br. at 3.)(quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 33 (1991)). Second, Defendant contends that the FAA preempts state law and policy which conflict with the "liberal federal policy favoring arbitration agreements." (Id. at 2-3.) Defendant cites Southland Corp. v. Keating, 465 U.S. 1 (1985) in support of the assertion that Congress, by legislating the FAA, "declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." (Def.'s Reply Br. at 2 (quoting Southland, 465 U.S. 1 at 10).)

The Court finds that Mr. Kowal's CEPA claims fall within the scope of the Arbitration Agreement. First, the Court notes that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial, forum . . . [and] so long as the prospective litigant

11

effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." Gilmer, 500 U.S. 20, 26-8 (1991); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985).  Here, although CEPA is not expressly listed in the Arbitration Agreement, the Court finds that CEPA claims are covered under the broad language of the Arbitration Agreement which covers, "claims for violation of any federal, state or other governmental constitution, statute, ordinance, regulation, or public policy including but not limited to Title VII of the Civil Rights Act, Age Discrimination in Employment Act, The Americans with Disabilities Act, Family and Medical Leave Act, Equal Pay Act and their state equivalents."  (Gosney Affidavit [Doc. No. 13-2] Attachment 1, 1.)[1]  Consequently, "the part[ies] should be held to [the Arbitration Agreement] unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Gilmer, 500 U.S. at 26.  Plaintiff cites no federal legislative history precluding CEPA claims from being subject to arbitration or

---

[1] Additionally, the Arbitration Agreement provides "for the waiver of [the parties'] respective rights to a trial by jury on the claims covered by this Agreement."  (Gosney Affidavit [Doc. No. 13-2] Attachment 1, 1.)  The Arbitration Agreement further states that "[a]rbitration shall be the exclusive forum for the claims covered by this Agreement."  Id.

prohibiting a party from waiving the right to a jury trial for CEPA claims.

Moreover, numerous courts have compelled arbitration of CEPA claims despite the 1990 state law amendment permitting jury trials of CEPA claims. For example, in Hemberger v. E*Trade Fin. Corp., the District Court held that an arbitration agreement signed by the plaintiff was binding, and as such, that the Court lacked subject matter jurisdiction over the plaintiff's NJLAD, CEPA, and emotional distress claims. No. 07-162, 2007 WL 4166012, at *6 (D.N.J. Nov. 19, 2007). Similarly, in Bleumer v. Parkway Ins. Co., the New Jersey Superior Court expressly rejected under federal preemption grounds the argument that the CEPA provision permitting jury trials precluded arbitration. 649 A.2d 913, 923-24 (N.J. Super. Ct. Law Div. 1994) (citing Southland, 465 U.S. at 16.) In addressing the 1990 amendment to CEPA, the New Jersey Superior Court, Appellate Division, found that "the right to jury trial . . . does not alone control the issue of enforceability of an agreement to arbitrate." Littman v. Morgan Stanley Dean Witter, 766 A.2d 794, 802 (N.J. Super. Ct. App. Div. 2001). In addition, as noted by the court in Young v. Prudential Ins. Co. of Am., Inc., "there is no evidence in the text or legislative history of CEPA or LAD that members of the classes protected by

13

those statutes cannot waive the right to jury trial by agreeing to arbitrate disputes with their employers." 297 N.J. Super. 605, 616 (N.J. Super. Ct. App. Div. 1997). In Young, the court found that CEPA claims generally fell within the applicable arbitration agreement, but that an exception in the arbitration agreement for disputes involving the insurance business permitted plaintiff to raise the specific claim at trial. Id. at 616-17, 628. Here, the Court finds that Plaintiff's CEPA claim falls within the scope of the Arbitration Agreement between Mr. Kowal and Defendant.

Moreover, the Court rejects Plaintiffs' assertion that the public policy and legislative intent behind CEPA invalidate arbitration agreements that are governed by the FAA. First, there is no evidence of such a policy or legislative intent against the arbitration of CEPA claims. See Young, 297 N.J. Super. at 616. Second, the FAA creates a federal policy strongly in favor of arbitration of disputes when a valid arbitration agreement has been entered into by the two parties and the dispute falls within the scope of the arbitration agreement. Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005). Furthermore, the Supreme Court recently held that "[w]hen state law prohibits outright the arbitration of a particular type of claim, the

analysis is straightforward: The conflicting rule is displaced by the FAA." AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1747 (2011) (citing Preston v. Ferrer, 552 U.S. 346, 353 (2008)). "[T]he clause in § 2 of the FAA that requires enforcement of an arbitration agreement 'save upon such grounds as exist at law or in equity for the revocation of any contract[,]' does not 'preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives.'" Litman, 655 F.3d at 231 (3d Cir. 2011) (quoting AT&T Mobility LLC, 131 S.Ct. at 1748.) Accordingly, the Court rejects Plaintiffs' argument that the Arbitration Agreement is invalid under New Jersey public policy. Therefore, the Court grants Defendant's request to stay the litigation and compel arbitration.

CONSEQUENTLY, for the reasons set forth above and for good cause shown:

IT IS on this 31st day of August 2012,

**ORDERED** that Defendant's motion [Doc. No. 13] shall be, and hereby is, **GRANTED**; and it is further

**ORDERED** that the parties shall proceed to arbitration on all claims asserted in Plaintiffs' complaint in accordance with the terms of the Arbitration Agreement; and it is further

**ORDERED** that this action is **STAYED** pending completion of arbitration.

                                            s/ Ann Marie Donio
                                            ANN MARIE DONIO
                                            UNITED STATES MAGISTRATE JUDGE

cc: Hon. Renée Marie Bumb